Shemia Fagan, ISB No. 12416
sfagan@hkm.com
**HKM EMPLOYMENT ATTORNEYS LLP**
999 West Main Street, Suite 100
Boise, ID 83702
Telephone:      208-500-2442
Facsimile:      206-260-3055

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KIMBERLY SURINER, an individual,<br><br>           Plaintiff,<br><br>      v.<br><br>CONCENTRIX SOLUTIONS<br>CORPORATION, a New York corporation,<br><br>           Defendant. | Case No.: _____<br><br>COMPLAINT FOR DAMAGES<br><br>DEMAND FOR JURY TRIAL |

COMES NOW Plaintiff Kimberly Suriner ("Ms. Suriner"), by and through her counsel of record, and for causes of action and claims for relief, alleges as follows:

///

///

///

1 – COMPLAINT FOR DAMAGES

## I.    NATURE OF THE ACTION

1.    This case arises from Defendant Concentrix Solutions Corporation's ("Concentrix") systematic campaign of disability discrimination and retaliation against Ms. Suriner, a high-performing employee who was forced from her position after years of exemplary service because she required reasonable medical accommodations. Ms. Suriner, who suffers from multiple chronic medical conditions including diabetes, hypertension, and blood clotting disorders, had successfully worked with established accommodations for years, first at Allstate and then at Concentrix following a corporate transition in 2022. Despite her outstanding performance, leadership roles, and contribution to training programs used company-wide, Concentrix embarked on a deliberate effort in 2024 to strip away her long-standing accommodations, subject her to a hostile work environment, deny her earned promotions, and ultimately constructively discharge her through forced unpaid leave. When Ms. Suriner repeatedly sought to engage in the interactive process and reaffirm her accommodation needs through proper medical documentation, Defendant Concentrix responded with immediate retaliation, removing her from her duties and placing her on involuntary leave within days of her protected requests. Defendant Concentrix's conduct culminated in Ms. Suriner's termination in early 2025, followed by the company's filing of knowingly false statements with Idaho's unemployment agency in a final act of retaliation designed to deny her the financial support to which she was entitled. This case seeks damages for Defendant Concentrix's violations of the Idaho Human Rights Act, and related state law claims arising from its unlawful discrimination, failure to accommodate, retaliation, and wrongful termination of a dedicated employee.

2.    Ms. Suriner has satisfied all administrative requisites before filing this lawsuit.

///

2 – COMPLAINT FOR DAMAGES

## II.    PARTIES

3.    Plaintiff Ms. Suriner is a resident of Twin Falls, Idaho.

4.    Defendant Concentrix Solutions Corporation principal place of business is located in Cincinnati, Ohio.

## III.    JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over the dispute under 28 U.S.C. § 1331. The claims in this action arise under the Constitution, laws, or treaties of the United States.

6.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this complaint occurred in Idaho.

**7.**    Supplemental jurisdiction over Ms. Suriner's state claims is proper pursuant to 42 U.S.C. § 1367 as the state claims arise from the same nucleus of operative facts as the federal claims.

## IV.    FACTUAL ALLEGATIONS

8.    Ms. Suriner began her employment with Allstate around February 2018. She quickly established herself as a high-performing employee. Through her skill and work ethic, Ms. Suriner earned multiple promotions, advancing from "Sales Associate" and "Licensed Sales Agent" to "Licensed Service Representative," to "Coaching Partner," and ultimately to the senior position of "Premier Customer Service Senior Associate" ("PCSSA") around March 2021.

9.    Ms. Suriner's performance was consistently exemplary, earning recognition including Allstate "Protection Club" medals in early 2019 and "Employee of the Month" in August 2020. Beyond her official duties, she developed innovative training tools including trivia decks, interactive games, and spreadsheets that were widely adopted within the department. Her

3 – COMPLAINT FOR DAMAGES

supervisors consistently recognized her potential, with Frontline Leader Jason Vilches stating in August 2022, "you are an amazing leader for this team" and expressing his belief that she would advance to Front Line Leader "by this time next year at the absolute latest" which would have been by August 2023.

10.     In or around October 2022, Allstate announced they were moving their customer service to third-party contractor, Concentrix Solutions Corporation. Ms. Suriner, who only a few months away from completing five years of successful employment at Allstate, learned of this major career change not through official company channels, but through a Facebook post, leaving her uncertain about her employment status for over a week. When her manager finally confirmed the transfer (called a "re-badge") to Defendant Concentrix on October 28, 2022, Ms. Suriner spent most of the week not knowing if she had a job or not. This unprofessional handling of the transition marked the beginning of a pattern of disrespectful treatment that would define her experience at Concentrix.

11.     Ms. Suriner suffers from several medical conditions that constitute disabilities under the law and require reasonable workplace accommodations. While employed by Allstate, Ms. Suriner initiated the formal interactive process in May 2022, informing Allstate's Workplace Assistance Team ("WAT") of her medical conditions and need for accommodations. In support of her request, Ms. Suriner's physician, Dr. Aaron Packham, provided letters in May and June 2022, explaining that she was taking a diuretic medication, Furosemide/Lasix, which required "frequent access to a bathroom." Dr. Packham also informed Allstate that Ms. Suriner "is unable to sit with her legs down for any length of time without risking severe complications of her underlying medical conditions." Dr. Packham specified that her medical conditions were not

conducive to her working on live calls and requested that Ms. Suriner "be placed on support indefinitely." Allstate honored these reasonable accommodation requests.

12.      Upon being "re-badged" to Defendant Concentrix in December 2022, Ms. Suriner immediately informed Vanessa Fulks in HR of her need for continued accommodations. She provided the letters from Dr. Packham and explained her medical requirements. Concentrix acknowledged her needs and initially continued the accommodation, providing her with a laptop so she could perform her work duties while elevating her legs and did not assign her live calls. The transition to Concentrix also ushered in a hostile and discriminatory work environment where Ms. Suriner was systematically belittled, her work was stolen, and her private medical information was mishandled. Ms. Suriner's health conditions were shared with the operating managers, the team leaders, and was spread all over. This careless and inappropriate dissemination of her protected health information was part of a broader pattern of disrespect and harassment.

13.      Ms. Suriner's official transition to Concentrix in late December 2022 marked a significant degradation in her working conditions. Her paid time off was drastically reduced and converted to an accrual system, and other benefits were diminished. Ms. Suriner was frequently humiliated by trainers and other coaching partners in front of new trainees and managers. During class introductions, trainers would praise other coaching partners by name and then dismissively add, "oh and Kim is here for support too." When Ms. Suriner would answer a trainee's question, a trainer would often roll their eyes and give a long-pointed sigh as if she was a burden to them. Other colleagues would publicly undermine her authority by stepping in while she was helping someone to give them the answer after she did, making it look as if Ms. Suriner did not know what she was doing and humiliating her in front of the class, the leads, and the bosses.

5 – COMPLAINT FOR DAMAGES

14.     On multiple occasions, Ms. Suriner's work product was stolen by her colleagues. She created many tools and worksheets for the training department and her work was stolen by others. In one flagrant example, Ms. Suriner made an excel sheet that was used in training/nesting to help the class be more organized and keep track of the metrics. The excel she created had a coaching form to fill out and email to the rep with the push of a button. A different coaching partner took credit for this tool and, as a result, received a bonus for creating something to make work easier.

15.     Around February 2024, after a change in HR personnel, a new HR representative, Kelly Wilkins, asked Ms. Suriner to resubmit her medical letters regarding disability accommodations. On February 22, 2024, Dr. Packham provided another updated letter to Defendant Concentrix, emphatically reiterating the medical necessity for Ms. Suriner's accommodations. The letter stated she "needs to be placed on support indefinitely" and warned that "[f]ailure to comply may result in lengthy periods of time missed from work due to hospitalizations as it has in the past." The letter concluded by advising that it would be to the "company's benefit and my patient's benefit to acquiesce to this official medical request." Defendant Concentrix again affirmed the accommodation's reasonableness by providing her with a small stool to help elevate her legs while working from home.

16.     The unprofessional and harassing conduct continued. In April and May 2024, a supervisor, Dan [Last Name Unknown] repeatedly addressed Ms. Suriner with demeaning terms like "kiddo" and "hun," which she found disrespectful. Supervisor Chad Fogerson, openly told Ms. Suriner and others that he judges people on how they look, remarking on how a particular woman was "not pretty at all." A coworker called Ms. Suriner and her colleagues "nazis."

6 – COMPLAINT FOR DAMAGES

17.    Despite Ms. Suriner having long-established and successful accommodations, Defendant Concentrix's management began a concerted effort in mid-2024 to revoke them and force her into a role that violated her medical restrictions. On June 18, 2024, Operations Manager Dereese Goodwin attempted to force Ms. Suriner back into a role that involved substantial time on live calls, directly contradicting Dr. Packham's recent medical recommendations for her to "be placed on support."

18.    In response, Ms. Suriner immediately emailed HR Wilkins to re-affirm her accommodation needs. She wrote, "I wanted to contact you regarding our conversation in February/March regarding supporting the teams because of the medication and health issues I'm experiencing. You mentioned that the business could accommodate that... My intention was to confirm whether the supervisors were informed about the accommodations." Ms. Wilkins responded by acknowledging the accommodation and assuring Ms. Suriner that she would handle it, stating, "I will ensure Dereese Goodwin is aware of your accommodations."

19.    Despite her exemplary performance, leadership experience, and her role in training many of the individuals who were ultimately promoted over her, Defendant Concentrix repeatedly passed Ms. Suriner over for advancement, offering vague, shifting, and pretextual reasons for its decisions. Ms. Suriner's failure to advance was not due to a lack of merit, but to unlawful discrimination. On August 22, 2024, Ms. Suriner applied for an open Team Leader position. During the interview on August 27, 2024, a supervisor explicitly instructed Ms. Suriner to "hold back on answering questions so Rowan Yellen and Cesar can." Rowan Yellen was a much newer and less experienced PCSSA whom Ms. Suriner had been coaching.

20.    On August 30, 2024, Ms. Suriner discovered she had been rejected for the open Team Leader position, not from a manager or HR, but by seeing her application status updated to

7 – COMPLAINT FOR DAMAGES

"not selected" in Concentrix's online portal. After Ms. Suriner reached out to Operations

Manager McCarrell to find out why she was not selected, McCarrell offered a vague, boilerplate

explanation that another candidate's "background and career objectives closely match what we

seek for this position." When Ms. Suriner requested specific feedback, McCarrell refused,

stating, "at this time the business need is for me to swiftly shift my focus back to my current

division." The rejection was a devastating blow, confirming Ms. Suriner's belief that she was

being systematically held back.

21.      On October 1, 2024, a new Team Leader, Dominique Price, again attempted to put

Ms. Suriner on live calls. That day, Ms. Suriner once more emailed her new supervisors,

Dominique Price and Leslie Williams, and copied HR Wilkins. She wrote, "Here is one of the

emails confirming the accommodations that have been arranged with Kelly Wilkins HR I have

added her to the email for any questions or concerns."

22.      Facing this unrelenting pressure and realizing her existing accommodation was

being ignored, Ms. Suriner took steps to provide Defendant Concentrix with an even more

explicit medical directive. On October 2, 2024, she obtained and submitted another medical

accommodation request from her physician, Dr. Packham. This letter left no room for

misinterpretation, stating: "Kimberly is currently taking a Lasix medication, due to the effects of

this medication she is unable to take phone calls. Therefore she needs to be placed on support

indefinitely." Dr. Packham again warned, "Failure to comply may result in lengthy periods of

time missed from work due to hospitalizations as it has in the past."

23.      Defendant Concentrix's response was immediate and hostile. On October 2, 2024,

just hours after Ms. Suriner re-asserted her accommodation needs, HR Wilkins emailed her that

"changes are taking place across [Coaching Partners] & training." HR Wilkins met with Ms.

8 – COMPLAINT FOR DAMAGES

Suriner and unilaterally removed her long-standing accommodations. On October 7, 2024, HR Wilkins informed Ms. Suriner that Defendant Concentrix was adequately staffed in the support roles at this time, effectively shutting down any discussion of Ms. Suriner continuing her long-standing medically necessary accommodations.

24.     Ms. Suriner, in contrast, actively attempted to engage in the interactive process. On October 8, 2024, after re-submitting her doctor's unequivocal note, she emailed HR Wilkins and offered a potential solution, suggesting, "we could work out a spot to do support for the whole division like I was before." This communication clearly signaled her willingness to work with Defendant Concentrix to find a reasonable accommodation.

25.     Defendant Concentrix flatly rejected her efforts and terminated the interactive process. On the afternoon of October 8, 2024, HR Wilkins claimed that Defendant Concentrix did not have any other support roles on the Allstate contract and instructed her to apply for medical leave. Defendant Concentrix's justification for this adverse action was explicitly tied to her protected request, with HR Wilkins writing, "Since this is due to medical (doctor stating you cannot take calls), I would recommend opening a medical leave with ADP." From October 7 to October 22, 2024, Defendant Concentrix forced Ms. Suriner on an involuntary, unpaid leave, compelling her to exhaust her accrued Paid Time Off, and removed her access to her work email account. The pretextual reason given, that Defendant Concentrix was "adequately staffed in the chat roles," was directly contradicted by the fact that Defendant Concentrix kept Rowan Yellen, a newer and less experienced PCSSA whom Ms. Suriner was actively mentoring, in a support role for the very class Ms. Suriner had been leading.

26.     After nearly two weeks on unpaid leave, Defendant Concentrix offered Ms. Suriner a temporary assignment on October 18, 2024, asking her to cover for another Team

Leader, Gabriel Dockery, who was out on medical leave. Ms. Suriner accepted and excelled in the role, successfully onboarding new associates who were thriving. However, she rightly feared this was merely a temporary reprieve. When Dockery returned, she was again forced onto involuntary unpaid leave on January 27, 2025.

27.    While covering for Dockery's medical leave, Ms. Suriner applied for three open positions with Defendant Concentrix, and was thrice rejected without the courtesy of an interview. In a final, desperate attempt to save her career and maintain her income, Ms. Suriner proactively reached out to HR on January 24, 2025. She messaged: "I wanted to see if you have any other projects or openings for me. If not, is it possible for me to work on the phones in order to maintain a consistent income till one becomes available?" In so doing, she offered to forgo her medical accommodation to keep her job. Defendant Concentrix's initial response was silence.

28.    Finally, on February 5, 2025, HR Wilkins sent a final email that effectively finalized her termination. The email stated, "While we understand that you have a pre-existing condition, recent changes in the [Coaching Partner] role means we can no longer accommodate the 'no phone time' request."

29.    On February 20, 2025, Ms. Suriner learned that Concentrix was actively fighting her unemployment benefits claim, forcing her into a lengthy investigation process, after which she was ultimately successful. The basis for Defendant Concentrix's opposition was entirely fabricated. On March 3, 2025, Ms. Suriner learned from the Idaho Department of Labor that Concentrix had falsely reported her leave of absence was "mutual" and that she had already returned to work on February 26. These knowingly false statements were a final act of retaliation, designed to punish Ms. Suriner for asserting her rights and to deny her the financial resources to which she was entitled.

10 – COMPLAINT FOR DAMAGES

## V.     CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**(Disability/Perceived Disability Discrimination in Violation of the Idaho Human Rights Act, I.C. § 67-5909 and 42 U.S.C. § 12101, et seq.)**

30.     Ms. Suriner realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

31.     At all material times, Ms. Suriner had a disability that substantially limits her major life activities.

32.     In the alternative, Defendant Concentrix perceived Ms. Suriner to be disabled.

33.     Defendant Concentrix knew about Ms. Suriner's disability prior to terminating Ms. Suriner.

34.     Alternatively, Defendant Concentrix's perceived Ms. Suriner to be disabled at the time it terminated her.

35.     Defendant Concentrix's termination of Ms. Suriner was substantially motivated by her disability or perceived disability and constitutes unlawful disability discrimination.

36.     As a direct and proximate result of Defendant Concentrix's unlawful conduct, Ms. Suriner has incurred and continues to incur economic losses in an amount to be proven at trial.

37.     As a direct and proximate result of Defendant Concentrix's unlawful conduct, Ms. Suriner has suffered and will continue to suffer mental stress, humiliation, inconvenience and loss of enjoyment of life all due to her non-economic loss in an amount to be determined at trial.

38.     Ms. Suriner is entitled to recover her costs and attorneys' fees.

///

///

///

11 – COMPLAINT FOR DAMAGES

## SECOND CAUSE OF ACTION

**(Failure to Engage in Interactive Process in Violation of the Idaho Human Rights Act, I.C. § 67-5909 and 42 U.S.C. § 12101, et seq.)**

39.     Ms. Suriner realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

40.     Ms. Suriner filed a charge of discrimination with the Idaho Human Rights Commission and the Equal Employment Opportunity Commission alleging violations of this law.

41.     This lawsuit was filed within ninety-days of Ms. Suriner's receipt of the Notice of Right to Sue.

42.     At all material times, Ms. Suriner had a disability that substantially limits her major life activities.

43.     In the alternative, Defendant Concentrix perceived Ms. Suriner to be disabled.

44.     Ms. Suriner was able to perform the essential functions of her job with reasonable accommodations.

45.     Ms. Suriner requested a reasonable accommodation from Defendant Concentrix and/or had otherwise disclosed to Defendant Concentrix that a disability may require reasonable accommodation.

46.     Defendant Concentrix engaged in an unlawful employment practice by failing to engage in the interactive process with Ms. Suriner although she requested reasonable accommodation and/or had otherwise disclosed to Defendant Concentrix that a disability may require reasonable accommodation.

47.     As a direct and proximate result of Defendant Concentrix's unlawful conduct, Ms. Suriner has incurred and continues to incur economic losses in an amount to be proven at trial.

12 – COMPLAINT FOR DAMAGES

48.     As a direct and proximate result of Defendant Concentrix's unlawful conduct, Ms. Suriner has suffered and will continue to suffer mental stress, humiliation, inconvenience and loss of enjoyment of life all due to her non-economic loss in an amount to be determined at trial.

49.     Ms. Suriner is entitled to recover her costs and attorneys' fees. Failure to engage in interactive process

### THIRD CAUSE OF ACTION

**(Failure to Accommodate Disability in Violation of the Idaho Human Rights Act, I.C. § 67-5909 and 42 U.S.C. § 12101, et seq.)**

50.     Ms. Suriner realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

51.     Ms. Suriner filed a charge of discrimination with the Idaho Human Rights Commission and the Equal Employment Opportunity Commission alleging violations of this law.

52.     This lawsuit was filed within ninety-days of Ms. Suriner's receipt of the Notice of Right to Sue.

53.     At all material times, Ms. Suriner had a disability that substantially limits her major life activities.

54.     In the alternative, Defendant Concentrix perceived Ms. Suriner to be disabled.

55.     Ms. Suriner was able to perform the essential functions of her job with reasonable accommodations.

56.     Ms. Suriner requested a reasonable accommodation from Defendant Concentrix and/or had otherwise disclosed to Defendant Concentrix that a disability may require reasonable accommodation.

57.     Defendant Concentrix failed to provide a reasonable accommodation to Ms. Suriner.

13 – COMPLAINT FOR DAMAGES

58.     As a direct and proximate result of Defendant Concentrix's unlawful conduct, Ms. Suriner has incurred and continues to incur economic losses in an amount to be proven at trial.

59.     As a direct and proximate result of Defendant Concentrix's unlawful conduct, Ms. Suriner has suffered and will continue to suffer mental stress, humiliation, inconvenience and loss of enjoyment of life all due to her non-economic loss in an amount to be determined at trial.

60.     Ms. Suriner is entitled to recover her costs and attorneys' fees.

**FOURTH CAUSE OF ACTION**

**(Wrongful Termination in Violation of Public Policy)**

61.     Ms. Suriner realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

62.     Defendant Concentrix's discharged Ms. Suriner because she asserted rights to which she was entitled under Idaho Law.

63.     Discouraging the conduct in which Ms. Suriner engaged, asserting her rights and/or the rights of protected persons under Idaho Law, jeopardizes these important public policies.

64.     As a direct and proximate result of Defendant Concentrix's unlawful conduct, Ms. Suriner has incurred and continues to incur economic losses in an amount to be proven at trial.

65.     As a direct and proximate result of Defendant Concentrix's unlawful conduct, Ms. Suriner has suffered and will continue to suffer mental stress, humiliation, inconvenience and loss of enjoyment of life all due to her non-economic loss in an amount to be determined at trial.

///

///

///

14 – COMPLAINT FOR DAMAGES

## VI.    ATTORNEY FEES AND COSTS; PREJUDGMENT INTEREST

66.    Ms. Suriner realleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

67.    As the direct result of Defendant Concentrix's actions and omissions, Ms. Suriner has been required to bring this action.

68.    Pursuant to Federal Rule of Civil Procedure 54, Idaho Code § 12-120(3), and other applicable law, Ms. Suriner is entitled to recover attorneys' fees and costs incurred herein.

69.    Ms. Suriner is also entitled to prejudgment interest pursuant to Idaho Code § 23-22-104.

## VII.    DEMAND FOR JURY TRIAL

70.    Ms. Suriner demands a trial by jury on all issues so triable, pursuant to Federal Rule of Civil Procedure 38.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Ms. Suriner prays for entry of judgment as follows:

A.    Damages for back pay and benefits lost and for future pay and benefits lost;

B.    Actual damages;

C.    Statutory damages;

D.    Liquidated damages;

E.    Non-economic damages for emotional distress, pain, suffering, and humiliation;

F.    Punitive damages;

G.    Pre- and post-judgment interest in an amount to be proven after trial;

15 – COMPLAINT FOR DAMAGES

H.      Reasonable attorneys' fees and costs;

I.      Injunctive relief; and

J.      Such other and further relief as the Court deems just and equitable.


DATED: March 14, 2026.

HKM EMPLOYMENT ATTORNEYS LLP


By: */s/ Shemia Fagan*
Shemia Fagan, ISB No. 12416
Email: sfagan@hkm.com

*Attorneys for Plaintiff*